# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| In re: | Chapter 7 |
| QAZI, MOHAMMAD H. | Case No. 8:08-bk-01923-CED |
| Debtor(s). | |
| DOUGLAS N. MENCHISE, CHAPTER 7 TRUSTEE FOR THE ESTATE OF BETA DIAGNOSTIC IMAGING, INC., | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 8:08-ap-00479-CED |
| MOHAMMAD H. QAZI, | |
| Defendant. | |

## PLAINTIFF'S CLOSING STATEMENT

Plaintiff, Douglas N. Menchise, as Chapter 7 Trustee (hereinafter referred to as "Trustee") for the Estate of Beta Diagnostic Imaging, Inc. (hereinafter referred to as "Beta"), hereby files his Closing Statement as directed by the Court following the final evidentiary hearing held on July 14, 2009 and July 24, 2009 as to the Adversary Complaint to deny the Debtor, Mohammad H. Qazi (hereinafter referred to as "Dr. Qazi"), a bankruptcy discharge.

I. **The Allegations Against Dr. Qazi**

The Adversary Complaint filed by the Trustee against Dr. Qazi seeks to deny him a discharge, based on his actions as a Debtor in the personal bankruptcy case of *In re Mohammad H. Qazi*, Case No. 8:08-bk-01923-CED, as well as an Insider in the related

bankruptcy case of *In re Beta Diagnostic Imaging, Inc.*, Case No. 8:08-bk-01106-CED and the related non-debtor corporation, Digital Diagnostic Imaging, Inc. (hereinafter referred to as "Digital"), pursuant to the following counts:

 A. <u>Count I</u> : §727(a)(2)(A) - Pre-Petition transfer, concealment and removal of assets (bank account proceeds, cash, accounts receivable and equipment) and §727(a)(2)(B) - Post-Petition transfer, concealment and removal of assets (bank account proceeds, cash, accounts receivable and equipment) - as an Insider of Beta pursuant to §727(a)(7).

 B. <u>Count II</u>: §727(a)(4)(A) - False oath - both as an Insider of Beta pursuant to §727(a)(7) and as a Debtor in his personal Chapter 7 case.

 C. <u>Count III</u>: §727(a)(3) - Failure to keep recorded information (intercorporate and personal transfers between Qazi, Beta and Digital) - both as an Insider of Beta pursuant to §727(a)(7) and as a Debtor in his personal Chapter 7 case.

 D. <u>Count IV</u>: §727(a)(5) - Failure to satisfactorily explain loss of assets (pension plan funds) - as a Debtor in his personal Chapter 7 case.

At the conclusion of the Trustee's case, the Court granted the Trustee's *Ore Tenus* Motion to Conform the Pleadings to the Evidence. The evidence presented at trial revealed to a greater extent the wrongful conduct of Dr. Qazi than detailed in the initial pleadings.

**II.** **<u>Trustee Has Met His Burden of Proof</u>**

 The Trustee has the burden of proof pursuant to Bankruptcy Rule 4005 by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291; 111 S.Court 654, 661,

112 L.Ed.2d 755 (1991); *In re Gipe*, 157 B.R. 171 (Bankr.Md.Fla 1993).

    A.    <u>Pre-Petition transfer, concealment and removal of assets (bank account proceeds, cash, accounts receivable and equipment) and Post-Petition transfer, concealment and removal of assets (bank account proceeds, cash, accounts receivable and equipment) - as an Insider of Beta</u>:

It is undisputed that Beta filed a Chapter 11 Petition on January 29, 2008 and that Dr. Qazi filed a Chapter 7 Petition on February 15, 2008. It is also undisputed that Dr. Qazi is the sole owner and officer of Beta and, as such, an "insider".

Dr. Qazi admitted, throughout his testimony at trial, as well as Beta's §341 Meeting, Dr. Qazi's Rule 2004 Exam, and pre-trial deposition, to removing from Beta's place of business in Brandon, Florida various items of computer and medical equipment and placing them in his home located in Orlando, Florida. Dr. Qazi also admitted to receiving Beta's accounts receivable in his personal post office box in Orlando, Florida, depositing the same into a joint bank account between Beta and Dr. Qazi at Regions Bank, and utilizing the funds at Dr. Qazi's discretion, including his own personal benefit.

According to the bank statements (Exhibits 7 through 14 presented at trial), the following amounts were received by Dr. Qazi from the date of Beta's Chapter 11 Petition on January 29, 2008 through the closing of the bank account on July 1, 2008:

| | |
|---|---|
| 1/30/08 | $8,019.20 |
| Feb 2008 | $57,412.84 |
| March 2008 | $11,529.46 |
| April 2008 | $6,566.29 |
| May 2008 | $739.47 |
| June 2008 | $8,739.49 |
| **Total** | **$93,006.75** |

On July 1, 2008, Regions Bank closed the account and forwarded to the Trustee the balance

of the funds on deposit in the amount of $12,533.95. Therefore, the total amount of cash/accounts receivable received and spent by Dr. Qazi, without disclosure or Court permission, is $80,472.80. Although the use and transfer of the cash/accounts receivable by Dr. Qazi as an insider in connection with another case pursuant to §727(a)(7) took place <u>after</u> the filing of Beta's bankruptcy and hence post-petition, a portion was used and transferred prior to the filing of Dr. Qazi's personal bankruptcy and therefore pre-petition, within one (1) year of the filing of Dr. Qazi's bankruptcy.

The transfer and/or use of the equipment and cash/accounts receivable was done by Dr. Qazi with the intent to hinder, delay or defraud creditors and the Trustee. Dr. Qazi's assertion that various sums were automatically debited from Beta's bank accounts by creditors is without merit since Dr. Qazi authorized the automatic debits and should have terminated the same.

Although Dr. Qazi, as with most defendants, did not admit to intentionally hindering, delaying or defrauding creditors or the Trustee, his actions and the relevant circumstances demonstrate otherwise.

Beta's Chapter 11 showed no efforts to reorganize and was filed on January 29, 2008, at or around the time that its landlord obtained a Writ of Possession for Beta's premises and the Schedules were not filed until February 4, 2008. The automatic stay prevented the landlord from recovering possession of the premises. Beta paid no post-petition rent to the landlord. Just nine (9) days after filing Beta's bankruptcy, on February 13, 2008 Dr. Qazi signed a Notice of Conversion to Chapter 7 but withheld filing the Notice of Conversion for

another week until February 20, 2008. On February 19, 2008, or one day prior to filing the Notice of Conversion, Dr. Qazi hired a moving truck, changed the locks and removed various computer and medical equipment constituting property of Beta's bankruptcy estate to his home in Orlando, Florida. A lot of the computer equipment is unaccounted for and still missing. (See Exhibit 16 admitted into evidence at trial.) Dr. Qazi has failed to adequately explain the loss of the computer equipment. The removal of the computer and medical equipment was only brought to light after an agent from Pentech, a secured creditor, confronted Dr. Qazi regarding missing equipment, who then admitted to having some of the missing equipment in his home. The fact that Dr. Qazi later paid the secured creditor/leasing company, Pentech, for the items that he wanted, without notice to creditors or permission of the Court, does not justify the removal and concealment of bankruptcy estate assets.

Additional evidence of Dr. Qazi's intent to hinder, delay or defraud a creditor was the $20,000.00 wire transfer on February 7, 2008 into the account of Digital, which Dr. Qazi admitted was for the purpose of avoiding a threatened IRS garnishment of Beta's bank account for unpaid taxes. (See February 2008 bank statement admitted into evidence at trial as Exhibit 8.)

In finding fraudulent intent, the Court may look to "Badges of Fraud" which include the following:

1. Lack of consideration for the asset transferred;
2. Family or close relationship between the parties;
3. Retention or possession and use and benefit of assets;

    4.  Financial condition of the transferor before and after the transfer;

    5.  Cumulative effect of the transactions or course of conduct after the onset of financial difficulties or a lawsuit; and

    6.  General chronology and timing of events.

See *In re Ingersoll*, 124 B.R. 116, 121 (M.D.Fla. 1991). All of these "Badges of Fraud" are present in connection with the transfer of the funds from Beta to Digital, equipment from Beta to Dr. Qazi and/or Digital, and funds from Beta to Dr. Qazi for his personal use.

  Although the Court denied the Trustee's *Ore Tenus* Motion made at the time of trial to amend the Complaint to add a count under §727(a)(6) for the Dr. Qazi's failure to obey a lawful Court Order Converting Case to Chapter 7, revoking the authority to operate Beta, the Court may still consider Dr. Qazi's failure to comply with the Court's Order of Conversion to prove fraudulent intent and may infer from Dr. Qazi's failure to comply with the Court Order that he possessed the requisite intent to hinder, delay and defraud the creditors and the Trustee. See *In re Future Time, Inc. v. Yates*, 26 B.R. 1006 (D.C.Ga., 1983), citing *In re Bone* No. 80-89-ATH (M.D.Ga., filed April 3, 1981), for the proposition that a party opposing the discharge of a debt can use any evidence, even that occurring outside a time limit, to prove the nature of an intent which occurred within a time limit, i.e. a present actual intent.

  The facts in the case of *In re Sharpe*, 305 B.R. 571 (M.D.Fla 2003), are very similar to the facts in this present case. In the *Sharpe* case, the Chapter 7 debtor transferred and used corporate funds of a Chapter 11 D.I.P. account for his own personal benefit including

personal membership in a tennis club, payment for his automobile and personal compensation as a corporate employee, despite knowing that he could not receive any compensation without Court approval. The Court denied the debtor's discharge in the *Sharpe* case for failure to comply with the Court's Orders. In the *Sharpe* case, the Court found the debtor endorsed and negotiated from the D.I.P. account at least 24 checks totaling more than $54,000.00. In this present case, Dr. Qazi used Beta's bank account proceeds as a personal ATM machine. The bank statements entered into evidence at trial show over 100 transactions by Dr. Qazi for the purchase of such things as items from the Apple Store, taking his daughter to a skate park in Orlando, personal malpractice insurance, car payments, restaurants, gas, health insurance, hotels, and entertainment of other doctors. Dr. Qazi admitted making the above purchases, as well as to paying "wages" to various individuals including approximately $900.00 of vacation pay to Bouchra Tegti. Dr. Qazi's conduct in transferring and using Beta's assets for his own personal use is similar to the debtor's conduct in the *Sharpe* case and, therefore, Dr. Qazi's discharge should also be denied.

Dr. Qazi's attempt to justify his actions by claiming that he was protecting the privacy of his patients and acting in the best interest of Beta was not supported by any evidence. In contradiction, Dr. Qazi testified to protecting patient privacy by transferring various patients' records to another radiologist in the Brandon area. Likewise, his testimony that his use of the bank account proceeds, cash and accounts receivable for "marketing" Beta's business by entertaining various doctors at restaurants and catering meals at doctor's offices is preposterous since he had decided to close Beta and signed a Notice of Conversion on

7

February 13, 2008, just two (2) weeks after filing Chapter 11 and would have no need to market a defunct company.

Dr. Qazi's payments to employees after the conversion of Beta's case to Chapter 7 are not legally justifiable under any circumstances. Dr. Qazi's statement that the employees needed the money and they were "threatening" him, does not justify violation of the Court's Order of Conversion since the automatic stay protected both Beta and Dr. Qazi from actions by the employees to collect any amounts owed.

Dr. Qazi did not have court permission to pay himself or his attorney after the filing of the Chapter 11 petition and, even if Dr. Qazi believed that the Bankruptcy Code authorized him to have free reign over the business checking account, any authority to use the corporate assets was revoked upon the conversion of the case to Chapter 7 and ordered by the Court.

Dr. Qazi's use of the bank account proceeds continued unabated until the bank account was closed in July 2008 and, despite the Court's Order revoking the Operating Order upon the conversion to Chapter 7, Dr. Qazi "burned through" $80,472.80 from the date that Beta filed Chapter 11 until the date that the bank account was closed in July 2008. Dr. Qazi's discharge should be denied and he should be ordered to return the $80,472.80 to Beta's bankruptcy estate.

    B.    <u>False Oath</u>:

        1.    <u>False Statement of Income</u>:

The evidence presented at trial, including the transcripts of the §341 Meeting of

Creditors held on April 2, 2008, Rule 2004 Examination held July 29, 2008, and Pre-Trial Deposition held on June 29, 2009, as well as the bank statements, established that Dr. Qazi failed to truthfully state any income. Dr. Qazi, a licensed medical doctor/radiologist, engaged in several activities that generated sources of revenue and income including Beta, Digital and outside work for hospitals and doctors throughout Central Florida.

Dr. Qazi testified to having a home in Orlando and has valued his one-half interest at $425,000.00 with a mortgage encumbering the property of approximately $725,000.00. Despite his sworn oath in the Bankruptcy Schedules that he had no income and his wife, a receptionist at Disney World, has an income of $1,733.00, his household expenses were $11,525.00 per month. Dr. Qazi's household expenses could not have been maintained on his wife's income. Although claiming that he was several months behind on his mortgage at or around the time of the filing of his personal bankruptcy, Dr. Qazi testified that his mortgage and other expenses were current as of the day of the trial. Dr. Qazi testified in his deposition to continuously earning money through Digital Diagnostic Imaging, Inc. in various amounts including $70,000.00 to $80,000.00 per year or $15,000.00 per month from 2004 through 2009, as well as maybe $10,000.00 to $15,000.00 a year working for Beta Diagnostic Imaging, Inc. Additionally, Dr. Qazi testified to borrowing money from friends and family and health insurance through Beta Diagnostic Imaging, Inc., as well as malpractice insurance and car expenses. Nowhere in either in Dr. Qazi's or Beta's Bankruptcy Schedules or Statement of Financial Affairs are any of this income, benefits or loans disclosed.

2.  Failure to Disclose Assets:

It is undisputed that Dr. Qazi failed to disclose his one-half ownership interest in the non-exempt timeshare owned with his wife, as well as Beta's ownership of a 2003 Dodge Van.

Additionally, Dr. Qazi failed to disclose the payment of loans to himself personally by Beta within one (1) year of filing bankruptcy including the $10,000.00 Check No. 1621 written to Dr. Qazi from Beta on January 10, 2008 as admitted into evidence as part of Exhibit 7, as well as Check No. 1827 dated February 5, 2008 from Beta to Dr. Qazi in the amount of $2,806.00 as admitted into evidence as part of Exhibit 8. Further, Dr. Qazi failed to disclose a $20,000.00 wire transfer from Beta to Digital on February 7, 2008, also as admitted into evidence as part of Exhibit 8. Dr. Qazi failed to disclose a $15,000.00 payment that he made personally to Digital, as admitted in his 2004 Exam, pages 70-73, admitted into evidence as Exhibit 5. Dr. Qazi also failed to disclose the transfer of funds from Beta's checking account to Digital's account to avoid the IRS garnishment and pay employees, as admitted in the 2004 Exam, pages 16-17, admitted into evidence as Exhibit 5.

The Eleventh Circuit Court of Appeals case *In re Chalik*, 748 F.2d 1184 (2nd Cir. 1974), states that all property in which the has a cognizable interest must be disclosed even if they are claimed exempt. A bankruptcy discharge is a privilege that is reserved to honest debtors who come to Bankruptcy Court seeking relief and debtors, including Dr. Qazi, have an unconditional, absolute obligation to make full disclosure of all matters relevant to the administration of the estate. *Kentile Floors, Inc. v. Winham*, 440 F.2d 1128 (9th Cir. 1971);

*In re Matter of Garman*, 643 F.2d 1252 (7th Cir. 1980). The most relevant and important disclosures to be made in the administration of a Chapter 7 case are transfers between the Debtor and related entities so that the Trustee may recover for the benefit of the estate any transfers avoidable under the Bankruptcy Code. Dr. Qazi's failure to disclose intercorporate and personal transfers of assets was material and intentional. Dr. Qazi testified that he kept Digital "debt free" and that the debts of his various radiology practices were limited to Beta and himself personally as a guarantor. By failing to truthfully disclose his income and various loan receipts from Beta, friends and family and by stating, under oath, there were no such transfers and that he had no income, constitutes a false oath and a non-disclosure. Full disclosure of all relevant facts is indispensable to the proper administration of the estate of the debtor. *In re Robinson*, 506 F.2d 1184 (2nd Cir. 1974). Advice of counsel is not a defense to a charge of making a false oath when it is plain the property should be scheduled. *In re Mascolo*, 505 F.2d 274 (1st Cir. 1974).

Dr. Qazi may well argue that his false oath was not intentional; however, based upon the evidence presented, Dr. Qazi's conduct, at best, displays a reckless indifference for the truth or a pattern of concealment and, either way, Dr. Qazi should not be entitled to a bankruptcy discharge. See *Eigsti*, 323 B.R. 778 (M.D.Fla 2005).

Similarly, Judge Funk held in the *Sadler* case, 282 B.R. 254 (M.D. Fla. 2002) that numerous misstatements in schedules give rise to an inference of fraud resulting in a loss of discharge. Additionally, Judge Glenn, in the *Unger* case, 333 B.R. 461 (M.D.Fla 2005), denied the debtor's discharge for filing a false oath after finding multiple inaccuracies in the

bankruptcy schedules which, cumulatively, evidenced a disregard for the truth.

C. <u>Failure to Keep Recorded Information</u>:

Dr. Qazi's discharge should likewise be denied pursuant to §727(a)(3) for failing to maintain recorded information regarding the pension plan proceeds and other monies that Dr. Qazi allegedly lent to Beta and for which Beta repaid Dr. Qazi at various times and in various amounts.

Dr. Qazi testified that the monies he put into Beta came from his pension plan, although Dr. Qazi had no records regarding the amounts or the dates that the pension plan proceeds were lent to Beta. Dr. Qazi testified at his §341 Meeting of Creditors, admitted into evidence as Exhibit 3, that he loaned Beta $950,000.00 which has not been repaid. Dr. Qazi also testified that he considered the money a loan and repaid it in various amounts on various dates.

Dr. Qazi presented no documentary evidence as to any payments from himself or his pension plan into Beta nor any repayment of any monies from Beta to Dr. Qazi. His vague explanations regarding these repayments and absence of information are insufficient. Dr. Qazi, as a licensed medical doctor and radiologist, as well as a business owner, should have maintained records regarding the pension plan loans and repayments between himself and his various companies.

D. <u>Failure to Satisfactorily Explain Loss of Assets</u>:

Similar to Dr. Qazi's failure to keep recorded information regarding the intercorporate transfers, repayments of loans to himself and monies loaned to Beta and

Digital by himself and his pension fund, Dr. Qazi failed to adequately explain the loss of the pension fund proceeds. Dr. Qazi failed to satisfactorily explain the loss of computer equipment taken from Beta on February 19, 2008. Dr. Qazi also failed to adequately explain how he was meeting his personal liabilities for his home in Orlando, Florida given his deficiency of assets and income. Dr. Qazi is scheduled as a creditor in the Beta bankruptcy, in the amount of $950,000.00 for monies loaned to Beta; however, Dr. Qazi could not adequately explain when, where and in what amounts these loans were made to Beta. Again, Dr. Qazi's explanation regarding the absence of information on the monies lent to Beta, as well as how he was supporting himself and his family given his lack of assets, justifies the denial of his discharge pursuant to §727(a)(5). The lack of documentation and lack of credible explanation for the loss of the pension funds is further inexcusable for Dr. Qazi, given his education and business experience. See in re *Escobar*, 53 B.R. 382, 384 (S.D.Fla 1985).

**III.     Conclusion**

Dr. Qazi filed Beta's Chapter 11 Petition on January 29, 2008 in bad faith. Beta took no steps whatsoever to comply with the duties of a debtor under Chapter 11. Beta did not pay any administrative rent, did not close its bank accounts nor open a D.I.P. account. Beta did not obtain a Court Order authorizing officer or insider compensation. Beta did not file financial reports, attend a §341 Meeting of Creditors, an initial debtor interview with the U.S. Trustee's Office, or pay quarterly fees. Beta did not obtain Court permission prior to paying its attorney a post-petition retainer. Beta took no steps to collect the Medicare receivables

13

which the Debtor testified was the main focus and reason for filing Chapter 11.

It is clear that the filing of the Chapter 11 was a cover-up for Dr. Qazi's intentional activity of removing items from the Beta's business premises to his home in Orlando for his personal use. Additionally, Beta's bankruptcy served to hinder, delay or defraud creditors and the Trustee by collecting the accounts receivable of Beta and using the cash for his own personal benefit.

Dr. Qazi concealed the truth of his substantial income from various sources including Beta, Digital and other hospitals and doctors groups from the sworn Bankruptcy Schedules and Statement of Financial Affairs. Additionally, Dr. Qazi failed to disclose payments to himself from Beta, one of which was a $10,000.00 professional fee on January 10, 2008, a $15,000.00 payment to Digital approximately two (2) weeks prior to his personal bankruptcy, and a $20,000.00 transfer from Beta to Digital on February 7, 2008. Dr. Qazi failed to disclose his ownership interest in a timeshare and Beta's ownership interest in an automobile.

Finally, Dr. Qazi failed to maintain adequate records regarding the $950,000.00 he allegedly loaned to Beta and the periodic repayments of the loan in various amounts and on various dates, specifics of which will probably never be known. Similarly, Dr. Qazi failed to adequately explain the loss of his pension fund proceeds, the computer equipment, and how he was meeting his living expenses given his lack of income and deficiency of assets.

For all of the above reasons, Dr. Qazi should be denied a bankruptcy discharge.

I HEREBY CERTIFY that true and correct copies of the foregoing were delivered via ELECTRONIC NOTIFICATION to the Office of the United States Trustee,

USTPRegion21.TP.ECF@USDOJ.GOV and by UNITED STATES MAIL to the Defendant's Attorney, Buddy D. Ford, Esquire, 115 N. MacDill Avenue, Tampa, Florida 33609-1521, on <u>August 21, 2009</u>.

                  /s/  Douglas N. Menchise
                DOUGLAS N. MENCHISE, ESQUIRE
                Florida Bar No. 214965
                300 Turner Street
                Clearwater, Florida 33756
                (727) 442-2186 / phone
                (727) 461-2096 / fax
                Dmenchise@verizon.net