UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| MOHAMMAD H. QAZI, | ) | Case No.: 8-08-bk-01923-MGW |
| | ) | |
| Debtor. | ) | |
| | ) | |
| DOUGLAS N. MENCHISE, CHAPTER 7 | ) | Adv. Pro. No.: 8-08-ap-00479-MGW |
| TRUSTEE FOR THE ESTATE OF BETA | ) | |
| DIAGNOSTIC IMAGING, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| MOHAMMAD H. QAZI, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S POST-TRIAL MEMORANDUM

**COMES NOW** Debtor/Defendant, MOHAMMAD H. QAZI, by and through his undersigned attorney, and files this his Post-Trial Memorandum pursuant to the directions of the Court at the conclusion of the Final Evidentiary Hearing on Trustee's Complaint to Deny Debtor's Discharge, being Adversary Proceeding No.: 08-ap-00479-MGW.

### I. FACTS AND TESTIMONY PRESENTED AT TRIAL:

Mohammad H. Qazi (hereinafter referred to as the "Defendant" or "Qazi") filed for Chapter 7 protection on February 15, 2009. Defendant is a medical doctor, and is employed as a radiologist. He was the principal owner of Beta Diagnostic Imaging, Inc. ("Beta"). Beta filed a Chapter 11 bankruptcy on January 29, 2008, and operated as a Debtor in possession until the case was converted to a Chapter 7 bankruptcy on February 20, 2008. Douglas Menchise, the Plaintiff in this case, was appointed as the Chapter 7 Trustee in Beta's case.

Beta was a Florida corporation that was incorporated on January 6, 2006. Its' primary business was the ownership and operation of Radiology Imaging Center, providing MRI, CT, Ultra-sound, Mammography, Bone density, & X-Ray services. Defendant was the President,

1

Director, and sole shareholder. Beta found it necessary to file for protection under Chapter 11 of the Bankruptcy Code due to Medicare holding in excess of $270,000.00 of its' claims and requiring additional documentation before releasing the proceeds already earned. Beta supplied the additional documentation, and the claims should have been paid. The delay and ultimate non-payment caused a cash flow problem in the day to day operations. Shortly after the bankruptcy filing, Medicare notified the Debtor that it would not pay the claims, or at least not in the near future. The trial testimony was that the Debtor consulted attorneys, but he did not have the financial resources to appeal Medicare's decision. As a result, Beta could not make its payments as they became due, and was left with no alternative but to convert the Chapter 11 case to a Chapter 7 case.

The trial testimony was that Defendant deleted his retirement fund in order to fund Beta's business in an effort to make it a successful diagnostic center. The testimony at trial was that in excess of $900,000.00 was utilized from Defendant's personal funds, including his retirement from 2006 through the date of the filing of the bankruptcy petition. The testimony was that the retirement funds were depleted prior to the filing of his bankruptcy petition, several months prior to the filing of the Beta's Chapter 11 case. Further, Defendant advanced more than $20,000.00 in an attempt to keep Beta in Chapter 11.

Further testimony revealed that Beta lost approximately $468,000.00 from January through December 2006; showed a net loss in 2007 of approximately $567,000.00; and lost in excess of $100,000.00 from January 1, 2008 through February 11, 2008. The evidence establishes that there was a legitimate reason for Beta to file a Chapter 11 Bankruptcy, that Beta could not make its payments as they became due, and that it had the full expectation to collect the medicare receivables to allow it to sustain an effective reorganization. The evidence further established that Beta simply ran out of money, and Defendant, the sole principal, had depleted his personal funds as well as his exempt retirement funds in an effort to salvage the business.

Defendant collected accounts receivable on behalf of Beta subsequent to the conversion of Beta's bankruptcy case to Chapter 7, and deposited the funds into Beta's bank account. Defendant wrote checks on Beta's account post-conversion in order to pay Beta's expenses, such as employee wages, lease payments, and medical transcription costs. Defendant ceased this practice once advised by Beta's Chapter 7 trustee, Douglas Menchise, at Beta's 341 Meeting of Creditors on April 2, 2008. The Trustee was appointed in February 2009, but interestingly, did not close the bank account until July 2009, nearly five (5) months later. The evidence presented at trial shows that at no time did Defendant act with fraudulent intent, nor did he use any of the funds for his personal benefit.

The Trustee refers to internal unaudited documents that purport to indicate that approximately $80,000.00 was transferred by Defendant from Beta's account post-conversion. This is simply not the case. The documents mentioned were unaudited documents that were determined to be on an accrual basis, and did not establish what the Trustee has continually alleged, that Defendant diverted in excess of $80,000.00 for his personal use. Beta's bank statements tell the true extent of post-petition, post-conversion funds which are at issue. After deducting for the utilities and the automatic withdrawals (which the Trustee could have cut off if he had timely closed the Debtor-in-possession account) the amount of funds utilized for gas and other office expenditures post-conversion was far less than the $20,000.00 that Defendant deposited into the account shortly before the voluntary conversion of the case. Again, evidence and the testimony establishes that there was no intent to hinder or delay creditors, or to conceal or transfer assets.

According to Beta's bank statements (Trustee's Exhibits 7 through 14), the following is a recap of the post-conversion deposits and withdrawals through the date of closing of the bank account on July 1, 2008:

**POST CONVERSION DEPOSITS**

February:

| | |
|---|---|
| 02/26/08 | $ 2,912.30 |
| 02/28/08 | $ 337.16 |
| 02/29/08 | $ 1,151.91 |
| March 08 | $11,529.46 |
| April 08 | $ 6,566.29 |
| May 08 | $ 739.47 |
| June 08 | $ 8,739.49 |
| Total Post Conversion Deposits | $31,976.08 |

**POST CONVERSION WITHDRAWALS**

| | |
|---|---|
| February 2008 | $ 1,698.15 |
| March 2008 | $12,491.51 |
| April 2008 | $ 4,437.23 |
| May 2008 | $ 1,187.76 |
| June 2008 | $ 346.51 |
| Total Post Conversion Withdrawals | $20,164.16 |

**AUTO WITHDRAWALS**

| | |
|---|---|
| February 2008 | $ 0.00 |
| March 2008 | $ 6,092.97 |
| April 2008 | $ 1,247.65 |
| May 2008 | $ 387.76 |
| June 2008 | $ 346.51 |

Total Post Conversion        $ 8,074.89

Auto Withdrawals

On July 1, 2008, nearly five (5) months after his appointment, the Trustee closed the Regions account and took the balance of $12,533.95 that remained in the account. Therefore, the total amount of funds that the Defendant disbursed post-conversion, mostly to protect the patients' records, totaled approximately $11,367.24, not the sum exceeding $80,000.00 that the Trustee alleges. Testimony and evidence further established that Defendant or his affiliated company put in a minimum of $20,000.00 "post-petition" in an effort to sustain Beta's business until the medicare receivables could be collected. This far exceeds the amount that the evidence established that Defendant utilized post-confirmation. This evidence in and of itself strongly suggests there was no intent to hinder, delay, or defraud creditors, or to conceal or transfer assets.

Further, Defendant is a medical doctor, and is therefore subject to certain laws and regulations. Defendant had a statutory duty under applicable HIPAA and Medicare laws to preserve the patient records associated with Beta Diagnostic Imaging, Inc. Defendant's actions, such as moving certain computer equipment to his home when the landlord threatened to lock-down the premises, served to preserve the assets of Beta's bankruptcy estate. Had Defendant not taken these actions, the bankruptcy estate would have been subjected to possible liability, including, but not limited to, criminal liability.

The evidence further established that, under the requirements of confidentiality for patients, Defendant had a duty to preserve patients' records even after the case was converted to a Chapter7 case. The evidence was that the Trustee failed to close the account in a timely fashion. As a result, numerous "automatic" withdrawals continued to deplete the Debtor-in-possession account. Had the Trustee immediately sought to close the account upon the Notice of Conversion, there would have been very little depletion. Since the Trustee failed to perform this task, which was well within the duties of a Chapter 7 Trustee, for several months, the

automatic deductions accrued. These are the deductions that now the Trustee complains about in the allegations set forth in his complaint. Testimony and evidence at trial established that Defendant was trying to preserve the confidentiality of his patients, which required maintaining the electricity and removing information from the office to maintain the integrity of the confidentiality requirements. Defendant did not transfer these assets or in any fashion conceal assets or defraud creditors. Defendant's testimony was credible in this respect, and he was very knowledgeable about his fiduciary responsibilities under the statutory medical provisions of confidentiality.

In addition, Defendant was confused regarding the difference between operating as a Debtor in Possession and as a Chapter 7 Debtor. Defendant testified at depositions and at trial that he believed that he was authorized to pay certain creditors, such as employees, because of their priority claimant status. Defendant therefore believed that his actions were proper. Beta's receivables were all deposited into Beta's account, and were therefore accounted for at all times. Defendant ceased this practice after the 341 Meeting of Creditors, when he was instructed by Plaintiff to no longer write checks or make any withdrawals on the account.

## II. **ADVERSARY PROCEEDING NO.: 08-479: JUDGMENT SHOULD BE ENTERED IN FAVOR OF DEBTOR ON ALL COUNTS**

### A. **COUNT I – 11 U.S.C. SECTION 727(a)(2)(A) and (B)**

Defendant did not transfer property of Beta with the intent to hinder, delay, or defraud creditors. In order to prevail under Section 727(a)(2)(A) and (b), the Plaintiff must establish that: 1) a transfer occurred; 2) if the transfer was made within one year before the filing of the petition, that it was property of the debtor or, if after filing of the petition, that it was property of the estate; and 3) at the time of the transfer the debtor possessed the requisite intent to hinder, delay, or defraud a creditor. *In re Post*, 347 B.R. 104, 109 (Bankr. M.D. Fla. 2006) (citing *In re Rowe*,

81 B.R. 653, 657 (Bankr. M.D. Fla. 1987))

Defendant does not dispute that a transfer occurred after the filing of the bankruptcy petition. However, as shown by the evidence and testimony presented at trial, the transfers were not made with the requisite intent to hinder, delay, or defraud creditors. Therefore, for the reasons set forth above, the Plaintiff has not met his burden under Section 727(a)(2)(A) and (B) as he could not establish that Defendant transferred or concealed assets with the intent to hinder, delay, or defraud creditors.

**B.     COUNT II - 11 U.S.C. SECTION 727(a)(4)(A)**

Defendant did not make a false oath or account in his bankruptcy schedules or Statement of Financial Affairs. In order to prevail under Section 727(a)(4)(A), the Plaintiff must prove, by a preponderance of the evidence, that "the debtor knowingly and fraudulently made a materially false statement under oath." *Post*, 347 B.R. at 111-112. The standard for proving fraudulent intent is higher under Section 727(a)(4) than the lesser (a)(2) standard. Under Section 727(a)(4), actual fraudulent intent is required. *Id.* at 112. "A false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent" *Id.* (citing *Carney v. Dupree*, 336 B.R. 506, 513 (Bankr. M.D. Fla. 2005).

It is telling that the Trustee for Defendant's individual case, V. John Brook, has never raised an objection to his discharge or filed any motions with the Court for any failure to cooperate with the administration of his personal bankruptcy estate. The errors on Defendant's Schedules and Statement of Financial Affairs in his individual case are *de minimis* given the extent of the debts owed by Defendant and his Corporation. To deny Defendant his discharge would be disastrous to him professionally and financially. This Court should not grant the Trustee's request for such a harsh result.

1. **QUESTION 1 OF STATEMENT OF FINANCIAL AFFAIRS**

Defendant listed "$0 (Not filed yet)" as his response to Question 1 of his Statement of Financial Affairs for the years 2005 - 2007. However, Defendant did indeed have income for those years. Defendant testified at trial that his bankruptcy schedules were prepared and filed on an emergency basis. Defendant had not yet filed his income tax returns for those years, and therefore did not have his income information available in order to complete the question. Further, Question 1 only requires disclosure of the Debtor's income for the two years preceding the bankruptcy filing. Therefore, Debtor's 2005 income was not required to be disclosed. Therefore, Defendant did not "knowingly and fraudulently" fail to disclose his income on Question 1 of his Statement of Financial Affairs.

2. **QUESTION 14 OF STATEMENT OF FINANCIAL AFFAIRS**

Defendant listed "None" as his response to Question 14 of his Statement of Financial Affairs because defendant was not "holding" Beta's accounts receivable. Defendant was merely servicing the accounts pursuant to the statutory requirements under HIPAA. Therefore, Defendant did not "knowingly and fraudulently" fail to disclose his possession and control of Beta's accounts receivable.

3. **SCHEDULE A (THE TIMESHARE)**

Defendant did not list his interest in a timeshare that he owns jointly with his wife on his schedules due to inadvertence. Defendant had not been paying the annual maintenance fees due on the timeshare, and therefore believed that the Creditor had taken title back to the timeshare. Further, Defendant testified at trial that his bankruptcy schedules were prepared and filed on an emergency basis. Therefore, he inadvertently omitted this asset, and did not "knowingly and fraudulently" fail to disclose his possession and control of the interest in the timeshare.

### 4. BETA'S SCHEDULE B (THE VEHICLE)

Defendant did not list Beta's interest in a Dodge Neon due to inadvertence. Given the low value of the vehicle, Defendant did not remember to list it as one of Beta's assets. Further, Defendant testified at trial that Beta's bankruptcy schedules were prepared and filed on an emergency basis. Therefore, he inadvertently omitted this asset, and did not "knowingly and fraudulently" fail to disclose Beta's interest in the vehicle.

Although there were some errors, such as the failure to list the timeshare, which was a marital asset, and failure to list a corporate car having a value of less than $2,000.00, this should not rise to the level to deny Defendant's discharge, as he has offered reasonable explanations for such omissions. Accordingly, the fact that Defendant failed to disclose income on his Statement of Financial Affairs was that he had depleted his savings and retirement and lost hundreds of thousands of dollars in Beta. Therefore, in his mind, he had losses and no income for two (2) years in question. Due to the fact that he had not filed his tax returns at the date of the filing of the petition, that he had no net income as a result of the losses in Beta, and the depletion of his personal funds, such explanation is logical. This certainly should not rise to the level of denying Defendant his discharge.

### C. COUNT III - 11 U.S.C. SECTION 727(a)(3)

Defendant did not fail to keep records of the collection of accounts receivable of Beta or other disposition of the property. The purpose of Section 727(a)(3) "is to make certain the creditors and the trustee are given sufficient information to understand the debtor's financial condition." *Menotte v. Davis*, 363 B.R. 614 (Bankr. M.D. Fla. 2006) (citing 6 *Collier on Bankruptcy* ¶ 727.03 [3][a], at 727-31). Section 727(a)(3) "does not require a full accounting of every business transaction, but 'there should be some written records, orderly made and preserved, from which the present and past condition of the debtor may be ascertained with substantial completeness and accuracy.'" *Id.* At 620 (citing *In re Sowell*, 92 B.R. 944, 947

9

(Bankr. M.D. Fla. 1988).

Defendant has turned over all records in his possession concerning Beta to Plaintiff. The records provided to Plaintiff were voluminous in that they consisted of several boxes containing detailed documents regarding the past and present financial records of Beta. The remainder of Beta's records should be in the possession of Accufast Billing, Beta's billing company.

Therefore, Plaintiff's allegation that Defendant failed to keep adequate records is inaccurate.

### D. COUNT IV - 11 U.S.C. SECTION 727(a)(5)

Defendant did not fail to adequately explain the disposition of property of Beta's estate. As stated above, Defendant deposited all funds received on behalf of Beta into Beta's bank account, and either wrote checks or used a debit card for all expenditures. All of Beta's relevant bank statements have been provided to the trustee. These bank statements clearly set forth all of the transactions on the account both pre and post-conversion. Therefore, the Plaintiff has failed to meet his burden under Section 727(a)(5).

### V. CONCLUSION:

The Adversary Proceeding should be decided in favor of QAZI on all Counts. There is no merit to any of the claims asserted by MENCHISE in the Adversary Proceeding. The Trustee, MENCHISE, has failed to meet his burden to deny the Defendant's discharge. Therefore, this Court should rule in favor of QAZI, and instruct the Clerk to enter Debtor's Discharge in this case without further delay.

DATED on this 24th day of August, 2009.

Respectfully submitted,

BUDDY D. FORD, P.A.,

_____
Buddy D. Ford, Esquire (FBN: 0654711)
Email: *Buddy@tampaesq.com*
Barbara C. Leon, Esquire (FBN: 0582115)
Email: *Barbara@tampaesq.com*
Jane Sobotta, Esquire (FBN: 0036568
Email: *Jane@tampaesq.com*
Jonathan a. Semach, Esquire (FBN: 0060071)
Email: *Jonathan@tampaesq.com*
115 North MacDill Avenue
Tampa, Florida 33609-1521
Telephone #: (813) 877-4669
Facsimile #: (813) 877-5543
Office Email: *Nancy@tampaesq.com*
Attorney for Debtor